**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **WESTERN EXPRESS, INC. d/b/a** ) | |
| **WESTERN LOGISTICS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 3:17-cv-01006** |
| ) | **Judge Aleta A. Trauger** |
| **OSCAR VILLANUEVA d/b/a LAS** ) | |
| **MARIAS PALLETS, PROGRESSIVE** ) | |
| **INSURANCE COMPANY d/b/a DRIVE** ) | |
| **INSURANCE FROM PROGRESSIVE,** ) | |
| **KASSNICK TRUCK, INC., NATIONAL** ) | |
| **INDEMNITY COMPANY d/b/a** ) | |
| **NATIONAL LIABILITY & FIRE** ) | |
| **INSURANCE, and ALLIANZ GLOBAL** ) | |
| **CORPORATE AND SPECIALTY d/b/a** ) | |
| **AGCS MARINE INSURANCE** ) | |
| **COMPANY,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM

Plaintiff Western Express, Inc. ("Western") initiated this action seeking resolution of the question of what entity should bear financial responsibility for a misdelivered shipment. Now before the court are five separate Motions to Dismiss, filed by each of the five defendants: National Indemnity Company d/b/a National Liability & Fire Insurance ("National") (Doc. No. 1-4)[1]; Progressive Insurance Company d/b/a Drive Insurance from Progressive ("Progressive") (Doc. No. 14)[2]; Oscar Villanueva d/b/a Las Marias Pallets ("LMP") (Doc. No. 21); Kassnick

---

[1] This motion was filed in state court prior to removal.

[2] This motion supersedes the Motion to Dismiss filed by Progressive while this action was still pending in the Circuit Court for Davidson County, Tennessee.

Trucking, Inc. ("Kassnick") (Doc. No. 32); and Allianz Global Corporate and Specialty ("Allianz") (Doc. No. 40).

The motions have been fully briefed and are ripe for review.[3] For the reasons set forth herein, LMP's motion will be denied, and the other defendants' motions will be granted.

## I.      Factual and Procedural Background

Western initiated this action by filing a Complaint in the Circuit Court for Davidson County, Tennessee on May 24, 2017, alleging that it entered into a Carrier-Broker Contract with LMP, pursuant to which LMP agreed to deliver a shipment for Western's customer, Colgate-Palmolive Company ("Colgate"), a non-party. (*See* Compl. ¶¶ 1, 2, 7 & Ex. 1, Doc. No. 1-5, at 11–15.)

LMP accepted load #5843456 for pick up in Redlands, California, on May 26, 2016, to be delivered to a Wal-Mart Distribution Center in Red Bluff, California, on May 27, 2017. (*See* Compl. ¶ 12 & Ex. 2, Doc. No. 1-5, at 16.) LMP enlisted the aid of subcontractor Kassnick to fulfill its contractual obligation to deliver the shipment. (Compl. ¶ 15.) Instead of delivering the load to the Wal-Mart Distribution Center in Red Bluff, California, Kassnick misdelivered the load to an address other than the address indicated on the Bill of Lading. (Compl. ¶ 16.) The shipment never reached its intended destination, and Western's customer filed a claim with Western for the misdelivered shipment in the amount of $88,787.80. (Compl. ¶ 19 & Ex. 6, Doc. No. 1-5, at 23.)

According to Western, LMP is obligated by the Carrier-Broker Contract ("Contract") to carry not less than $100,000 in cargo insurance to compensate a party entitled to recover under a

---

[3] Western's response to Allianz's Motion to Dismiss is not actually due until October 30, 2017. The court finds it unlikely that the anticipated response will make any arguments not already included in the Responses to National's and Progressive's respective Motions to Dismiss.

bill of lading covering the goods being transported. (Compl. ¶ 8; Contract ¶ 1(b).) The Contract provides that LMP's liability as "carrier" "shall begin at the time cargo is loaded upon CARRIER'S equipment at point of origin and shall continue until said cargo is delivered to the designated consignee at destination." (Compl. ¶ 9; Contract ¶ 1(c).) In addition, LMP agreed to "defend and hold harmless" Western and Western's customers "against any and all loss and damage claims on each shipment transported by CARRIER pursuant to this agreement . . . related to shipments transported by CARRIER." (Compl. ¶ 10; Contract ¶ 1(d).) The untitled document to which Express refers as the "Rate Confirmation and Load Tender" (Compl. ¶ 12 & Ex. 2) also provides that LMP as carrier agreed to "defend, indemnify, and hold broker its customers [sic] harmless from and against expenses and damages arising out of or related to services provided by Carrier," and it specifies that "any dispute arising from or related hereto shall be brought exclusively in the courts of Davidson County, Tennessee." (Compl. Ex. 2.)

Defendant Progressive agreed to insure LMP for cargo losses and issued a certificate of insurance covering such losses that was effective at all times relevant to this suit. (Compl. ¶ 14 & Ex. 3, Doc. No. 1-5, at 17.) Defendant National agreed to insure Kassnick for liability, and Allianz agreed to insure Kassnick for loss and damage to cargo transported by Kassnick. (Compl. ¶¶ 17–18 & Ex. 5, Doc. No. 1-5, at 22.)

Based on these allegations, Western asserts that LMP violated the Contract with Western by failing to deliver the shipment as directed on the Bill of Lading and is therefore liable for losses caused by that breach. Western has called upon Progressive to cover the loss on behalf of its insured, LMP, but Progressive has failed to cover the loss. (Compl. ¶ 23.)

Western asserts that Kassnick was negligent in failing to transport the shipment to the address indicated on the Bill of Lading, thereby causing loss to Western and Western's customer.

Western has called upon National to cover the loss caused by its insured, Kassnick, but National has failed to cover the loss. (Compl. ¶ 24–26.) Western also asserts that Kassnick breached its agreement with LMP by failing to deliver the shipment to the address directed by the Bill of Lading, causing loss to Western and Western's customer, and that Allianz has failed to cover that loss. (Compl. ¶¶ 27–28.)

Progressive removed this action to federal court on July 5, 2017. Prior to removal, both Progressive and National had filed Motions to Dismiss in state court and counsel for LMP had entered an appearance. It appears that neither Kassnick nor Allianz had been served prior to removal.

Following removal, both National and Villanueva filed Notices of Consent to Removal. Progressive filed a new Motion to Dismiss in this court (Doc. No. 14), which supersedes the first (Doc. No. 1-3); National's pre-removal Motion to Dismiss remains pending as well (Doc. No. 1-4). Following removal, LMP, Kassnick, and Allianz each filed a Motion to Dismiss (Doc. Nos. 21, 32, 40). Western has now filed a Response in opposition to each of the motions (Doc. Nos. 18, 42, 30, 44) except that of Allianz (*see* Note 3, *supra*). Progressive, National, and Kassnick filed Replies. (Doc. Nos. 23-1, 49, 52).

## II. Standards of Review

### A. Rule 12(b)(6)

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of

the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action"; instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B.    Rules 12(b)(1) and 12(b)(2)

Rule 12(b)(1) provides that the defendant may file a motion to dismiss based on a court's "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). The plaintiff has the burden of proving jurisdiction when the defendant challenges subject-matter jurisdiction under Rule 12(b)(1). *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986).

Likewise, a plaintiff confronted with a Rule 12(b)(2) motion "bears the burden of establishing the existence of jurisdiction" over the defendant's person. *Estate of Thompson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008) (citation omitted).

### III.    LMP's Motion to Dismiss

LMP's motion is premised on Rules 12(b)(1) and 12(b)(6). It seeks dismissal based on two theories. First, it asserts that Western does not have Article III standing to assert a breach of contract claim against LMP, because it has not paid its customer-shipper, Colgate, for the alleged

loss occasioned by the misdelivered shipment and does not hold an assignment of Colgate's rights. Thus, it argues, Western is not the real party in interest and its breach of contract claim against LMP must be dismissed.

Second, it argues that the Contract between Western and LMP, by its terms, is governed by the Carmack Amendment, 49 U.S.C. § 14706 *et seq.*, which preempts the Contract and renders it void as a matter of law, because Western does not have an assignment from its customer-shipper and therefore cannot step into the customer's shoes for purposes of a claim under the Carmack Amendment.

In conjunction with its Response in opposition to LMP's motion, Western submitted a copy of the Assignment of Claim executed on August 7, 2017 by and between Western and Colgate, the customer-shipper whose lost cargo is the subject of this lawsuit. The Assignment makes it clear that Western paid Colgate the value of its claim, and Colgate assigned to Western all "right, title and interest of Colgate related to its aforementioned claim and its interest under the Bill of Lading, with right to collect and exercise all rights in relation thereto." (Doc. No. 30-1.) Based on the Assignment, Western asserts that it has standing and that both of the theories upon which LMP relies in support of its motion to dismiss have been rendered moot.

The court notes, first, that there is a fundamental difference between statutory standing and Article III standing. The Supreme Court has enumerated the elements necessary to establishing the latter:

> First, Plaintiff must have suffered an injury in fact—an invasion of a legally-protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations and quotations omitted).

> Statutory standing, on the other hand, asks
>
> "whether *this* plaintiff has a cause of action under [a particular] statute." The question is closely related to the merits inquiry (oftentimes overlapping it) and is analytically distinct from the question whether a federal court has subject-matter jurisdiction to decide the merits of a case.

*Roberts v. Hamer*, 655 F.3d 578, 580–81 (6th Cir. 2011) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 n.2 (1998)); *see also Davis v. Passman*, 442 U.S. 228, 239 n.18 (1979) (distinguishing the concepts of Article III standing and cause of action and noting that "[w]hether petitioner has asserted a cause of action . . . depends not on the quality or extent of her injury," as does the inquiry under Article III standing, "but on whether the class of litigants of which petitioner is a member may use the courts to enforce the right at issue"). Thus, "[w]here a plaintiff lacks statutory standing to sue, her claim should be dismissed for failure to state a claim upon which relief can be granted, not for lack of subject-matter jurisdiction." *Roberts*, 655 F.3d at 581 (citing *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 626 (6th Cir. 2010)).

In this case, the allegations in the Complaint are clearly sufficient to establish Article III standing. The plaintiff alleges the existence of a contract between it and LMP, breach of that contract, and damages. Specifically, LMP's breach caused Western to breach its own obligations to Colgate, as a result of which Colgate filed a claim with Western demanding reimbursement of nearly $89,000. (Compl. ¶ 19.) The facts as alleged by Western, regardless of whether Western had actually paid Colgate's claim at the time it filed suit, are sufficient to establish that Western had suffered the invasion of a legally protected interest and suffered an injury that was both

"concrete and particularized" and "actual or imminent," rather than conjectural or hypothetical. Dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1) is therefore unwarranted.

LMP's second theory in support of dismissal is that Western lacks statutory standing: the motion asks whether Western is authorized under the Carmack Amendment to bring suit in its own name, in the absence of an assignment of rights from Colgate, the shipper. Apparently conceding that it does not, Western has now obtained the requisite assignment and insists that LMP's motion has thereby been rendered moot.

The court agrees that the Assignment renders moot LMP's argument based on lack of statutory standing and will therefore deny the Motion to Dismiss. However, Western will be required to file an Amended Complaint expressly pleading the assignment.

## IV.     Kassnick's Motion to Dismiss

Defendant Kassnick seeks dismissal based on lack of personal jurisdiction, under Rule 12(b)(2). Kassnick argues that it does not have sufficient contacts with the state of Tennessee to support the exercise of personal jurisdiction over it—either specific or general—for purposes of the state law negligence and breach of contract claims, based on Tennessee's long-arm jurisdiction statute and constitutional principles of due process. (Doc. No. 33, at 3–4 (citing Tenn. Code Ann. § 20-2-223(a) and *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003).)

It is well established that federal courts follow state law to determine the bounds of personal jurisdiction over a defendant. *See* Fed. R. Civ. P. 4(k)(1)(A) (service of process is effective to establish personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located"). Tennessee statutes authorize the exercise of jurisdiction over nonresident defendants on "[a]ny basis not inconsistent

with the constitution of this state or of the United States." Tenn. Code Ann. §§ 20-2-214(a), 20-2-225(2). These statutes have been construed to expand the jurisdictional reach of Tennessee courts "as far as constitutionally permissible." *First Cmty. Bank, N.A. v. First Tennessee Bank, N.A.*, 489 S.W.3d 369, 384 (Tenn. 2015), *cert. denied sub nom. Fitch Ratings, Inc. v. First Cmty. Bank, N.A.*, 136 S. Ct. 2511 (2016). The question here is whether this court's exercise of jurisdiction over Kassnick would "comport[] with the limits imposed by federal due process." *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014).

Analysis of the relevant due process considerations would ordinarily require the court to examine the defendant's contacts with the state to determine whether the defendant is subject to the exercise of either general or specific jurisdiction within this state. Here, however, the plaintiff contends only that personal jurisdiction over Kassnick exists because Kassnick has consented to the exercise of general jurisdiction by the courts of Tennessee. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) ("[B]ecause the personal jurisdiction requirement is a waivable right, there are a 'variety of legal arrangements' by which a litigant may give 'express or implied consent to the personal jurisdiction of the court.'" (quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982))).

Specifically, Western argues that Kassnick, as an authorized, interstate motor carrier of freight for hire, is subject to 49 U.S.C. § 13304(a), a provision of the Motor Carrier Act of 1935. This provision states in pertinent part:

> A motor carrier or broker providing transportation subject to jurisdiction under chapter 135[4] . . . shall designate an agent in each State in which it operates by name and post office address on whom process issued by a court with subject

---

[4] "[J]urisdiction under chapter 135" generally refers to the jurisdiction of the Secretary of the Department of Transportation and the Surface Transportation Board, *see* 49 U.S.C. § 13102(1) & (2) (defining "Board" and "Secretary") over the interstate "transportation by motor carrier and the procurement of that transportation."

matter jurisdiction may be served in an action brought against that carrier or broker.

*Id.* Kassnick concedes that, although it has never operated in or through Tennessee or had any other contact with Tennessee (*see generally* Guevara Aff., Doc. No. 34), it is authorized to transport materials in the forty-eight contiguous states and that, in accordance with § 13304(a), it has designated an agent for service of process in Tennessee. It is also apparent from the record that Western served Kassnick's designated Tennessee agent on October 3, 2017. (Doc. No. 43, Ex. A.) Citing *Shapiro v. Southeastern Greyhound Lines*, 155 F.2d 135 (6th Cir. 1946), *Scott v. Southeastern Greyhound Lines*, 5 F.R.D. 11 (N.D. Ohio 1945), and *Grubb v. Day to Day Logistics, Inc.*, No. 2:14-cv-01587, 2015 WL 4068742 (S.D. Ohio July 2, 2015), Western argues that designation of an agent for service of process pursuant to a statutory requirement constitutes "consent to be sued in each of the States in which the required designation is filed" (Doc. No. 44, at 2 (quoting *Grubb*, 2015 WL 4068742, at *3)), regardless of the presence or absence of minimum contacts with any such state. Western also argues that the Supreme Court's recent holding in *Daimler AG v. Bauman*, limiting general jurisdiction over a foreign corporation to the corporation's principal place of business and place of incorporation, is inapposite because it did not address the principle of consent. (*See id.* at 3 ("Since, under current Sixth Circuit law, Kassnick consented to personal jurisdiction, there is no need to analyze whether there exists specific or general jurisdictional basis or the presence of 'minimum contacts.'").)

Kassnick, citing *Bendix Autolite Corp. v. Midwesco Enterprises*, 486 U.S. 888 (1988), and *Pittock v. Otis Elevator Company*, 8 F.3d 325 (6th Cir. 1993), argues to the contrary that the mere designation of an agent for service of process, in compliance with a service-of-process statute, does not automatically subject it to general jurisdiction within that state.

Both parties acknowledge that there are numerous cases holding that the designation of an agent for service of process *does* imply consent to personal jurisdiction. *See, e.g.*, *Ocepek v. Corporate Transp., Inc.*, 950 F.2d 556, 557 & n.1 (8th Cir. 1991) (holding that designation of an agent under 49 U.S.C. § 10330(b), the predecessor to § 13304(a), gave the court jurisdiction by consent, thus obviating the need for any examination of the defendant's minimum contacts with the forum under the state's long-arm statute); *Grubb*, 2015 WL 4068742, at *3–4 (finding jurisdiction by consent under 49 U.S.C. § 13304(a)); *R.R. Donnelley & Sons Co. v. Jet Messenger Serv., Inc.*, No. 03 C 7823, 2004 WL 1375402, at *4 (N.D. Ill. May 25, 2004) (recognizing split of authority but denying the defendant's motion to dismiss for lack of personal jurisdiction based on its holding that "the weight of authority analyzing 49 U.S.C. § 13304(a)'s service of process provision correctly holds that a corporation has consented to be sued in the forum where it designates an agent to receive service of process"); *Rounds v. Rea*, 947 F. Supp. 78, 82–84 (W.D.N.Y. 1996) (same). And there are numerous cases standing for the opposite premise as well. *See, e.g.*, *Davis v. Quality Carriers, Inc.*, Nos. 08-4533 (SRC), 08-6262(SRC), 2009 WL 1291985, at *5 (D.N.J. May 7, 2009) (disagreeing with *Ocepek* and holding that designation of national agent for service of process in compliance with Motor Carrier Act does not constitute consent to personal jurisdiction in any particular state); *Landreville v. Joe Brown Co.*, No. 06–5568, 2008 WL 910009, at * 4 (E.D. Pa. April 2, 2008) (same); *Lyons v. Swift Transp. Co.*, No. 01-0209, 2001 WL 1153001, at *5 (E.D. La. Sept. 26, 2001) (same).

Based on its review of the above-referenced cases, the opinions upon which they rely, and controlling Sixth Circuit precedent, this court concludes that the mere designation of an agent for service of process in compliance with 49 U.S.C. § 13304 does not, standing alone,

constitute consent to the general jurisdiction of the state in which such agent is appointed, for the reasons explained below.

Western's argument hinges upon the applicability of *Shapiro v. Southeastern Greyhound Lines*, which Western characterizes as "upholding personal jurisdiction on the basis of service of process on a registered agent under the theory of consent." (Doc. No. 44, at 2.) In fact, in *Shapiro*, the Sixth Circuit considered an appeal of an order quashing service of summons on the grounds of improper *venue*. *Shapiro*, 155 F.2d at 136. The exercise of personal jurisdiction was not in question. Rather, under the federal venue statute then in effect, in any case in which the court's jurisdiction was premised upon diversity, venue was proper only in a state in which either the plaintiff or the defendant resided. Neither party in *Shapiro* resided in Ohio, but the defendant, a motor carrier, had designated an agent for service of process in Ohio in accordance with 49 U.S.C. § 321(c), a predecessor to § 33401(a). The defendant's "motion to quash service was sustained, presumably upon that ground." *Id.* The *Shapiro* court found that the order quashing service was erroneous in light of a recent Supreme Court case, *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165 (1939).

*Neirbo*, however, like *Shapiro* itself, concerned venue, not jurisdiction. The matter concerned events that arose within New York, the state in which suit had been filed, and jurisdiction was not contested. The statute requiring registration of an agent for service of process in that case was a state, rather than a federal, statute—a difference the Sixth Circuit found immaterial in *Shapiro*. The Supreme Court held that a corporation that registers an agent for service of process in a state consents to venue in that state and thus waives application of the applicable venue statute, which, as indicated above, provided that venue in a diversity action was appropriate only in a state in which either the defendant or the plaintiff resided. That the case

concerned venue rather than jurisdiction was affirmed by later Supreme Court opinions construing *Neirbo. See, e.g., Olberding v. Ill. Cent. R.R. Co.*, 346 U.S. 338, 341–42 (1953) (describing *Neirbo* as holding that "the venue requirements of what is now 28 U.S.C. § 1391(a) [were] satisfied because Bethlehem had designated an agent in New York 'upon whom a summons may be served within the State of New York'"); *Okla. Packing Co. v. Okla. Gas & Elec. Co.*, 309 U.S. 4, 5 (1940) (construing *Neirbo* as holding that a corporation that has designated an agent for service of process in a state consents to be sued in the courts of that state "upon causes of action arising in that state"). Thus, to the extent that some loose language in *Shapiro* might be read as suggesting that a corporation that designates an agent for service of process in a state consents to the general *jurisdiction* of that state even for actions arising outside that state,[5] any such suggestion was purely dictum and well outside the bounds of the Supreme Court case upon which the actual holding was based.[6]

---

[5] *Shapiro* quoted from an older Supreme Court case, also referenced by *Neirbo*, which stated:

> If the citizenship of the parties is sufficient, a defendant may consent to be sued anywhere he pleases, and certainly jurisdiction will not be ousted because he has consented. Here, the defendant companies have provided that they can be found in a district other than that in which they reside, if a particular mode of proceeding is adopted, and they have been so found. In our opinion, therefore, the Circuit Court has jurisdiction of the causes * * * .

*Shapiro*, 155 F.2d at 136 (quoting *Ex parte Schollenberger*, 96 U.S. 369, 378 (1877)). Certainly it remains true that a party may consent to the exercise of personal jurisdiction, *see, e.g., Burger King Corp.*, 471 U.S. at 472 n.14, but *Shapiro*—and *Schollenberger*—concerned objections to venue, not personal jurisdiction.

[6] Another case upon which the plaintiff relies and which has been heavily cited by other courts finding that registration of an agent under the Motor Carrier Act constitutes consent to personal jurisdiction, *Scott v. Southeastern Greyhound Lines*, 5 F.R.D. 11 (N.D. Ohio 1945), is wholly inapplicable. There, the plaintiff, an Ohio resident, had been injured on a bus traveling through Kentucky. She filed suit in Ohio and effected service upon the defendant's designated agent for service of process. The designation was made pursuant to the Motor Carrier Act. The venue statute then in effect was satisfied, because the plaintiff filed suit in the state in which she resided. The defendant sought to quash the return of summons, arguing that the cause of action arose in Kentucky and that the Ohio court therefore lacked *subject matter* jurisdiction. The court

Thereafter, in *Bendix Autolite Corp. v. Medwesco Enterprises*, 486 U.S. 888 (1988), the Supreme Court suggested, again in dictum, that, pursuant to Ohio statute, "to be present in Ohio, a foreign corporation must appoint an agent for service of process, which operates as consent to the general jurisdiction of the Ohio courts." *Id.* at 889. The Court did not conduct any analysis of the state statute, however, and was not called upon to judge its constitutionality. The actual holding in the case was that an Ohio statute that suspended statute-of-limitations protections for out-of-state entities, but not for in-state entities or for companies that had a registered agent for service of process and thus qualified as in-state entities, violated the Commerce Clause.

Just a few years later, the Sixth Circuit was called upon to consider the same Ohio statute, but within a somewhat different context. In *Pittock v. Otis Elevator Co.*, 8 F.3d 325 (6th Cir. 1993), the plaintiffs, residents of Ohio, were injured in Las Vegas, Nevada while riding an elevator maintained by Otis Elevator. They filed suit against Otis in Ohio. Otis sought to dismiss for lack of personal jurisdiction under Ohio law, specifically Ohio's long-arm jurisdiction statute. In response, the plaintiffs did not present any evidence of Otis's minimum contacts with the state under that statute. Instead, relying on *Bendix*, they argued that Otis consented to personal jurisdiction in the state by designating an agent for service of process within the state, in accordance with the Ohio statute that required "[e]very foreign corporation for profit that is licensed to transact business in this state . . . [to] have and maintain an agent . . . upon whom process . . . may be served within this state." *Pittock*, 8 F.3d at 328 (quoting Ohio Rev. Code § 1703.041(A)).

---

ultimately determined that it did have jurisdiction, but the defendant did not raise, and the court did not address, the question of *personal* jurisdiction. In any event, the decision, which predates *International Shoe v. State of Washington*, 326 U.S. 310 (1945), by just a few months, is clearly outdated.

The Sixth Circuit concluded that *Bendix*'s suggestion that the mere designation of an agent for service of process constitutes consent to jurisdiction was dictum. The court also picked up on *Bendix*'s comment that "[r]equiring a foreign corporation to appoint an agent for service in all cases and to defend itself with reference to all transactions, including those in which it did not have the minimum contacts necessary for supporting personal jurisdiction, is a significant burden." *Bendix*, 486 U.S. at 893 (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114 (1987)). The Sixth Circuit read that portion of Bendix to be "saying that the mere designation of an agent in compliance with the service-of-process statute does not automatically eliminate the requirement of minimum contacts to establish personal jurisdiction." *Pittock*, 8 F.3d at 329.

Based in part on that reading, the *Pittock* court held unequivocally that the mere designation of an agent for service of process in a particular state, in compliance with a state statute, standing alone, does not constitute consent to general jurisdiction within that state. Because the plaintiffs did not show that Otis had any contacts with the state of Ohio and instead based personal jurisdiction solely on consent, the court affirmed the dismissal of the case based on lack of personal jurisdiction. The Sixth Circuit's opinion in *Pittock* is binding precedent within the Sixth Circuit on the precise issue presented here.[7]

In sum, the court finds that the plaintiff's reliance on *Shapiro*, which rests on *Neirbo*, is misplaced. Under *Pittock*, it is clear that Kassnick's designation of an agent for service of process, standing alone, does not constitute consent to the general jurisdiction of this state, and

---

[7] This court specifically rejects the rationale of the Southern District of Ohio in *Grubb v. Day to Day Logistics* insofar as it construed *Shapiro* and *Scott* as addressing the question of personal jurisdiction rather than venue and subject matter jurisdiction, respectively, and it failed to take *Pittock* into account.

Western has not alleged the requisite minimum contacts required for the assertion of specific jurisdiction. Kassnick's Motion to Dismiss (Doc. No. 32) will, therefore, be granted.

**V.      The Insurance Companies' Motions to Dismiss**

*A.       The Parties' Positions*

The Motions to Dismiss filed by defendants National, Progressive, and Allianz (collectively, the "Insurance Companies") (Doc. Nos. 1-4, 14, 40) are all premised upon Rule 12(b)(6) of the Federal Rules of Civil Procedure and assert that, under Tennessee law, the plaintiff is barred from bringing a direct action against an insurer based solely upon its status as a liability insurer.

In response, Western concedes that Tennessee is not a "direct action" state. Although the Complaint clearly asserts only state law claims for negligence and breach of contract against Kassnick and LMP, and Western's claims for damages against the Insurance Companies are based on their purported failure to cover the loss on behalf of their insureds, LMP and Kassnick, Western argues that Tennessee law is irrelevant, because its Complaint is based on, and governed by, federal law. (*See, e.g.*, Response to Progressive M. Dismiss, Doc. No. 18, at 1.) That is, Western insists that its claims are premised upon a failure to deliver a shipment by motor carriers operating in interstate commerce under federal licenses issued by the Federal Motor Carrier Safety Administration. It asserts that, as federal license holders, defendants LMP and Kassnick are required by 49 U.S.C. § 13906 to file a bond, insurance policy or other security in an amount sufficient to cover bodily injury and damage to property. 49 U.S.C. § 13906(a)(1). According to Western, a motor carrier endorsement form known as MCS-90 must be attached to any insurance policy issued to a motor carrier, pursuant to 49 C.F.R. § 387.15, and each insurer's "potential liability . . . is pursuant to the mandatory policy MCS-90 endorsement," a "creature of federal

regulation [that] must be interpreted according to federal law." (*See, e.g.*, Doc. No. 18, at 2 (citing *Integral Ins. Co. v. Lawrence Fulbright Trucking, Inc.*, 930 F.2d 259 (2d Cir. 1991)).)

In reply, the Insurance Companies generally reiterate their argument that Tennessee is not a direct action state and that Tennessee substantive law in that regard overrides the fact that a federal question exists within this litigation. In addition, they insist that the MCS-90 endorsement does not authorize a direct action against an insurer unless there is already an unsatisfied judgment against the insured trucking company and that the MCS-90 endorsement will never apply to this litigation because MCS-90 liability does not extend to cargo losses, which is the only type of loss alleged in this lawsuit.

**B.      Discussion**

Removal in this case was premised upon diversity jurisdiction and, alternatively, on the basis that the plaintiff's claims are governed by the Carmack Amendment to the ICC Termination Act of 1995, 49 U.S.C. § 14706[8] or by the Federal Aviation Administration Authorization Act of 1994, 49 U.S.C. § 14501. Western contends that a direct action against the Insurance Companies is permissible under these federal laws and other federal statutes and regulations governing liability in this case, including 49 U.S.C. § 13906, 49 C.F.R. § 387.15 and the MCS-90 endorsement required by that regulation. The court concludes that, whether

---

[8] The Carmack Amendment provides standardized rules of common-carrier liability for interstate shipments on roads and rails. *CNA Ins. v. Hyundai Merch. Marine Co.*, 747 F.3d 339, 354 (6th Cir. 2014). The Carmack Amendment "fully preempt[s] state law concerning the liability of interstate rail and road carriers." *Id.* (citing *Adams Express Co. v. Croninger*, 226 U.S. 491, 505–06 (1913)). The Carmack Amendment only applies to shipping contracts that begin in one state and terminate in another and is generally inapplicable to shipping contracts where shipment begins and ends in the same state. *Id.* In this case, however, the Carrier-Broker Contract between Western and LMP expressly adopts the application of the Carmack Amendment and its implementing regulations. (*See* Compl. Ex. 1, Doc. No. 1-5 at Pt. V.)

jurisdiction is premised upon federal question or diversity of citizenship, the plaintiff may not bring a direct action against the Insurance Companies.

      *1.     Federal Law*

First, nothing in the federal laws cited by the plaintiff or the Insurance Companies authorizes a direct action by a person not covered by an insurance policy against an insurer, prior to the adjudication of liability on the part of the insured. Rather, the Carmack Amendment expressly authorizes a civil action against a delivering carrier or a carrier responsible for loss or damage. 49 U.S.C. § 14706(d). Courts that have been called upon to consider the issue have uniformly concluded that the Carmack Amendment does not authorize a direct action against an insurer by a third party. *See, e.g.*, *Chisesi Bros. Meat Packing Co. v. Transco Logistics, Inc.*, No. No. 17-2747, 2017 WL 2573992 (E.D. La. June 14, 2017) (presuming that the Carmack Amendment does not authorize direct action against insurance companies but nonetheless concluding that the statute did not preempt Louisiana state law expressly authorizing direct actions); *Harvey D. Bailey, Inc. v. Markel Ins. Co. of Canada*, No. 1:09-CV-372-SJD-TSH, 2010 WL 2710511, at *3 (S.D. Ohio Feb. 19, 2010) ("Nothing in the language of the [Carmack Amendment] provides for a right of action by an injured party against a motor carrier or freight forwarder's insurer."), *report and recommendation adopted*, No. 1:09CV372, 2010 WL 2723721 (S.D. Ohio July 8, 2010); *Land O' Lakes v. Joslin Trucking, Inc.*, No. 08-cv-355-bbc, 2008 WL 5205910, at *1 (W.D. Wis. Dec. 11, 2008) ("[T]he Carmack Amendment does not authorize direct action suits . . . .").

Likewise, 49 U.S.C. § 13906, which requires a motor carrier to file a bond, insurance policy or other security in an amount sufficient to cover property damage, does not provide a basis for suing an insurer directly prior to the determination of the insured's liability. *Accord Air*

*Plus Ltd. v. Transp. Distrib. Servs., Inc.*, No. 04 C 3806, 2004 WL 2359256, at *1 (N.D. Ill. Oct. 19, 2004) ("[E]ven a cursory reading of § 13906 demonstrates that the statute was not intended to create a federal cause of action against a statutory insurer . . . .").

The plaintiff's reliance on 49 C.F.R. § 387.15 and the MCS-90 endorsement required by that regulation is similarly misplaced. The regulation as well as the endorsements as issued specifically provide that the insurance coverage "as is afforded, for public liability, does not apply to . . . property transported by the insured, designated as cargo." 49 C.F.R. § 387.15; Progressive Reply Ex. 1, Doc. No. 23-2.) The MCS-90 endorsement therefore has no application in this case, where the only loss alleged is a loss of cargo. Moreover, even if it did apply, the MCS-90 and 49 C.F.R. § 387.15 do not establish direct liability or authorize suit directly against an insurer by a third party. Instead, they memorialize the insurer's agreement "to pay, within the limits of liability described herein, *any final judgment recovered against the insured* for public liability resulting from negligence." (*Id.* (emphasis added).) In other words, an insurance company's obligations under the endorsement are not triggered until the insured's liability for the loss has been established.

2.      *State Law*

To the extent that the plaintiff's claims may be grounded in state law, Tennessee, as a matter of public policy, does not permit direct actions by a person not covered by an insurance policy against an insurer, prior to the adjudication of liability on the part of the insured, whether under a contract or negligence theory of liability. *Ferguson v. Nationwide Prop. & Cas. Ins. Co.*, 218 S.W.3d 42, 52–58 (Tenn. Ct. App. 2006). In adopting this rule, the Tennessee Court of Appeals discussed the issue at length and quoted from other jurisdictions around the country likewise prohibiting direct actions against insurers. The court noted that "[t]he rationale behind

this rule appears to be simply that the Courts feel that it would not be sound public policy to permit an insurer to be joined as a defendant in an action grounded upon the acts of the insured." *Id.* at 43 (quoting *Delmar News, Inc. v. Jacobs Oil Co.*, 584 A.2d 531, 533–34 (Del. Super. Ct. 1990)). It further noted that, as a matter of contract law, an insurer does not become "legally obligated to pay as damages" any amount owed by the insured unless and until such an obligation is established, for instance, by the rendering of a judgment against the insured. *Id.* at 55.

The question of whether state law either barring or permitting direct actions against insurance companies should be applied in a federal diversity action, and whether such laws should be characterized as substantive or procedural, "has long been recognized as problematic throughout the country." *Polensky v. Continental Cas. Co.*, 397 F. Supp. 2d 1164, 1167 (D.N.D. 2005) (citing *State Trading Corp. v. Assuranceforeningen Skuld*, 921 F.2d 409, 414–15 (2d. Cir. 1990)). Some courts have found direct action statutes to be substantive, for purposes of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). *See, e.g.*, *State Trading Corp.*, 921 F.2d at 416 (holding that Connecticut's limited direct action statute is substantive law); *Collins v. American Auto. Ins. Co.*, 230 F.2d 416, 422 (2d Cir. 1956) (holding that Louisiana's direct action statute is substantive because it does more than "merely shorten the legal process; it creates what is substantially a new right of action"); *Allstate Ins. Co. v. Stanley*, 282 F. Supp. 2d 1342, 1343–44 (M.D. Fla. 2003) (holding that Florida statute barring direct action against insurance company was a matter of substantive state law and therefore applied in federal diversity action). Other courts have found them to be procedural. *See, e.g.*, *Moore v. United Services, Auto. Ass'n*, 808 F.2d 1147, 1153–54 (5th Cir. 1987) ("The right to maintain a direct action against an insurer based upon the negligence of its insured is considered a remedial right and is, therefore,

governed by the law of the forum."); *Dechand v. Ins. Co. of State of Pa.*, 732 F. Supp. 1120, 1122 (D. Kan. 1990) (holding, under Kansas law, that Kansas statute authorizing a direct action against insurance companies is remedial and does not confer substantive rights upon the injured plaintiff, but that the rule nonetheless applied in a federal diversity case because there was no conflicting federal rule).

Here, the court concludes that Tennessee's bar is likely substantive, because it eliminates a right of action. *Accord Stanley*, 282 F. Supp. 2d at 1343. Regardless, it seems that the substantive/procedural distinction is immaterial, because there is no direct conflict between state and federal law on the issue. *Accord Dechand*, 732 F. Supp. at 1122 (citing *Hanna v. Plumer*, 380 U.S. 460 (1965)).

### C.      Conclusion: Insurance Companies' Motions to Dismiss

Regardless of whether the plaintiff's claims are governed by the Carmack Amendment or by state law, and regardless of whether Tennessee's direct-action rule is considered to be substantive or procedural, the applicable law precludes a direct cause of action against an insurer by a person not covered by an insurance policy, prior to the adjudication of liability on the part of the insured. The Motions to Dismiss filed by the Insurance Companies (Doc. Nos. 1-4, 14, 40) will therefore be granted.[9]

## IV.     Conclusion

For the reasons set forth herein, the court will deny defendant LMP's Motion to Dismiss (Doc. No. 21), but the plaintiff will be required to file an Amended Complaint expressly pleading

---

[9] Rule 14(a)(1) of the Federal Rules of Civil Procedure authorizes a defendant to implead a "nonparty who is or may be liable to it for all or part of the claim against it." The granting of the insurance companies' Motions to Dismiss would, of course, be without prejudice to LMP's ability to seek permission to implead an insurance company that might be directly liable to it under Rule 14.

the assignment of rights from Colgate to Western.

Defendant Kassnick's Motion to Dismiss for lack of personal jurisdiction (Doc. No. 32) will be granted.

The Insurance Companies' Motions to Dismiss (Doc. Nos. 1-4, 14, 40) will be granted on the basis that the plaintiff is barred from bringing a direct action against an insurer based solely upon its status as a liability insurer.

An appropriate Order is filed herewith.

ENTER this 24th day of October 2017.

ALETA A. TRAUGER
United States District Judge